Filed 6/29/26  In re J.D. CA1/4

# NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FIRST APPELLATE DISTRICT

## DIVISION FOUR

| | |
|---|---|
| In re J.D., a Person Coming Under the Juvenile Court Law. | |
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br>v.<br>J.D.,<br><br>    Defendant and Appellant. | A172689<br><br>(Contra Costa County Super. Ct. No. J24-00406) |

In this juvenile wardship proceeding (Welf. & Inst. Code § 602), J.D., a minor, appeals from an order of the juvenile court, declaring him an indefinite ward of the court for violations of Vehicle Code section 10851, subdivision (a), Penal Code section 496d, subdivision (a), and Vehicle Code section 2800.1, subdivision (a).

The People based their allegations against J.D. on an incident in which a driver and a passenger evaded police in a stolen car and then fled on foot. The sole issue on appeal is whether sufficient evidence supported the juvenile court's finding that J.D. was the driver of the car.  We conclude that it did, and we therefore affirm.[1]

---

[1] J.D. improperly filed his notice of appeal before the juvenile court issued its dispositional order.  (See *In re Hunter W.* (2023) 88 Cal.App.5th 358, 368 [juvenile court's jurisdictional findings are not immediately

## BACKGROUND

At approximately 12:27 a.m., deputies received a Flock alert for a stolen vehicle passing them.[2]  The deputies caught up to the vehicle and activated their lights and sirens.  The vehicle did not stop, however, but instead increased speed while driving through a residential area.  As the vehicle approached a dead end, both the driver and passenger exited the car while it was still in motion.  The car collided with a gate, and the driver and passenger ran in opposite directions as the deputies chased them, with the driver heading toward a residential neighborhood to the left.  Dash camera footage shows the driver wearing a black jacket with reflective stripes, dark pants, shoes with a reflective design, and a mask covering his face.  The deputies apprehended the passenger, and later identified him as E.D., J.D.'s older brother.  They lost sight of the driver, however, when he jumped a fence into a front yard.  Later-obtained surveillance footage from a neighbor's yard showed a person wearing the same distinctive clothing as the driver jumping another fence across a street and about half a block away.

The deputies then waited for additional units to arrive and requested a drone operator to help locate the driver.  Over the radio, the deputies described the driver as about five feet ten inches tall, "skinny build," and wearing all black.  The deputies later changed the height in the police report

appealable].)  However, the reviewing court may exercise its discretion to treat such an appeal as timely.  (Cal. Rules of Court, rules 8.406(d) & 8.104(d)(2).)  We choose to do so here.  "Typically, premature appeals are deemed to be timely when the decision being appealed from has been made preliminarily, but is not yet final.  For instance, premature notices of appeal have been treated as timely when they were filed after the verdict but before the pronouncement of judgment."  (*In re Ricky H.* (1992) 10 Cal.App.4th 552, 558, disapproved on another ground in *In re A.R.* (2021) 11 Cal.5th 234, 251, fn. 2.)

[2] Flock is a street license plate camera system

to between five feet eight inches tall and six feet tall; J.D. is five feet four inches tall. Once the additional units arrived, officers established a perimeter around the neighborhood. At around 12:46 a.m. the drone took flight, using a thermal camera to search the area within the perimeter. The drone showed that the neighborhood streets were empty, with no noticeable heat signatures outside of a few animals. However, at around 12:59 a.m., an officer acting as spotter for the drone operator saw a person walking along the street where the initial vehicle chase took place. The person had a thin build and was "wearing a dark . . . sweatshirt, jacket long-sleeve top, and . . . dark pants." The drone then followed the person as they walked up the street and entered a corner residence, roughly eight houses away from the collision site. Before entering, the person stopped, looked up at the drone and then back at the path they had just followed.

Officers had detained and identified E.D. by this point. They were familiar with his family, and they knew that both E.D. and J.D. lived in the same corner residence that the person had entered. An officer went to the house and through a front window observed a young, shirtless male. The police then called J.D.'s mother, asking her to tell J.D. to come outside. When he did, they arrested him. J.D. was wearing a dark hooded sweatshirt, dark-colored jeans, and shoes with a reflective design. He was not wearing a black jacket with reflective stripes.

Officers then performed a protective sweep of the house, and the only people found inside were J.D.'s mother and grandmother. During the sweep, they did not find a jacket with reflective stripes, but were not looking for it because at the time the officers conducting the sweep did not know that J.D. had been wearing it. They also did not find the jacket in the neighborhood.

At J.D.'s jurisdictional hearing, his mother testified that within 30 seconds of hearing the police sirens, she saw J.D. in the living room, but roughly 10 to 15 minutes later, she saw J.D. standing outside the front door. She added that she saw him "shortly before" the police officers arrived at the house, which she agreed was around 1:00 a.m. She also stated that there was a long period of time that night when she did not see J.D. and that he and E.D. had been spending time together.

After the close of evidence and argument, the juvenile court found that the circumstantial evidence proved beyond a reasonable doubt that J.D. was the driver of the stolen vehicle. At a subsequent dispositional hearing, the court declared J.D. its indefinite ward and placed him on home supervision with his mother.

## DISCUSSION

J.D. argues that insufficient evidence supports the juvenile court's finding that he was the stolen vehicle's driver. We disagree.

As with other forms of evidence, we apply the substantial evidence test to determine whether an identification suffices to support a finding that an allegation is true. (See *People v. Cuevas* (1995) 12 Cal.4th 252, 257.) "[I]t is not necessary that any of the witnesses called to identify the accused should have seen his face." (*People v. Lindsay* (1964) 227 Cal.App.2d 482, 494.) "Identification based on other peculiarities may be reasonably sure. Consequently, the identity of a defendant may be established by proof of any peculiarities of size, appearance, similarity of voice, features or clothing." (*Ibid.*)

We review this challenge as we would in an adult criminal case. (*In re A.G.* (2020) 58 Cal.App.5th 647, 653.) Specifically, " 'we review the whole record in the light most favorable to the judgment to decide whether

4

substantial evidence supports the conviction, so that a reasonable fact finder could find guilt beyond a reasonable doubt.'" (*Ibid.*; see Cal. Rules of Court, rule 5.780 [specifying proof beyond a reasonable doubt as standard of decision]; *Conservatorship of O.B.* (2020) 9 Cal.5th 989, 1008.) We must assume the existence of every fact in support of the judgment that the juvenile court reasonably could deduce from the evidence. (*People v. Morales* (2020) 10 Cal.5th 76, 88.) Substantial evidence includes circumstantial evidence and any reasonable inferences drawn therefrom. (*People v. Rodriguez* (1999) 20 Cal.4th 1, 11.) "'Apropos the question of identity, to entitle a reviewing court to set aside a [fact finder's] finding of guilt the evidence of identity must be so weak as to constitute practically no evidence at all.'" (*People v. Mohamed* (2011) 201 Cal.App.4th 515, 521.)

Here, we find that there was substantial circumstantial evidence to support the juvenile court's finding that J.D. was the driver of the stolen car.

First, the police chase occurred in J.D.'s neighborhood, the passenger in the car was J.D.'s brother, and their mother testified that they had been spending time together and that there was a long period of time that evening when she had not seen J.D. While these considerations might not suffice on their own, together with other evidence they support a finding that is not mere "speculation," as J.D. contends.

Second, the incident occurred in the middle of the night, and the drone video showed only one person outside in the neighborhood. J.D.'s counsel conceded in closing argument that J.D. was the person in the video, which was established by his mother's testimony that she saw him outside the house around 1:00 a.m., the same time the video shows the person walking up and then entering. It showed him walking along the same street on which the initial incident had taken place, less than 30 minutes after officers had

5

lost sight of the driver. J.D. argues on appeal that the person seen by the drone did not exhibit any suspicious movements, but as the Attorney General argues, by the time J.D. was seen by the drone, he would have had no need to hurry or take further evasive action, "[a]nd it may be inferred that [he] walked casually on the street to avoid seeming suspicious."

Third, J.D. matched the general description of the driver given by the deputies—a thin black male wearing dark clothing. While officers did not see J.D. wearing the distinctive jacket when he came out of the house, he had ample time to change his clothing or discard the item before his arrest. Through the window, officers had observed him shirtless, indicating he did in fact change his clothing, since he was clothed in the drone video that showed him outside. J.D. emphasizes that there was a six-inch discrepancy between the deputy's estimate of the driver's height and J.D.'s own. He argues that the deputy, with eleven years of experience, "must have honed his ability to accurately describe fleecing [sic] suspects after dark." As the juvenile court noted, however, the deputies only had roughly four seconds to observe the driver before he evaded them. Further, they observed the driver from nearly 30 yards away, in the dark, as the suspect was crouched. In these circumstances, the discrepancy is not so meaningful as to undermine the other reasons to conclude that J.D. was the driver.[3]

---

[3] The trial court also concluded that the reflective markings on the driver's shoes in a video showing the driver fleeing the car, and another showing a person jumping over a fence, matched those J.D. was wearing when he was arrested. On appeal, J.D. does not dispute that the patterns matched, but argues that it is "conjecture to deem the design unique given the vast commercialism of marketing athletic shoes for young men." We need not address this argument because we conclude that substantial evidence supported the trial court's identification of J.D. as the driver regardless.

## DISPOSITION

The judgment is affirmed.

GOLDMAN, J.

WE CONCUR:

STREETER, Acting P. J.
SWEET, J. *

---

*Judge of the Marin Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.