[No. B201676. Second Dist., Div. Eight. Mar. 9, 2009.]

THE PEOPLE, Plaintiff and Respondent, v.
ALEJANDRO ROA, Defendant and Appellant.

**COUNSEL**

Tara K. Allen, under appointment by the Court of Appeal, for Defendant and Appellant.

Edmund G. Brown, Jr., Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Pamela C. Hamanaka, Assistant Attorney General, Linda C. Johnson and Gary A. Lieberman, Deputy Attorneys General, for Plaintiff and Respondent.

**OPINION**

**O'NEILL, J.**[*]—Appellant Alejandro Roa was convicted by jury of carjacking (Pen. Code, § 215; undesignated section references are to that code), and

---

[*]Judge of the Ventura Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

being under the influence of a controlled substance (Health & Saf. Code, § 11550, subd. (a)), with a finding that he personally used a firearm in the carjacking (Pen. Code, § 12022.53, subd. (b)). Sentenced to a term of 15 years, appellant contends that the evidence he used a firearm during the offense was insufficient. Respondent opposes this contention and also asserts that the abstract of judgment should be corrected in various respects. We conclude that substantial evidence supports the firearm enhancement. In so doing, we consider factors concerning out-of-court identifications that were articulated in *People v. Cuevas* (1995) 12 Cal.4th 252 [48 Cal.Rptr.2d 135, 906 P.2d 1290] (*Cuevas*). We affirm the judgment, after modifying it in accordance with one of respondent's requests.

## FACTS

Viewed in accordance with the governing rules of appellate review (*People v. Ochoa* (1993) 6 Cal.4th 1199, 1206 [26 Cal.Rptr.2d 23, 864 P.2d 103]), the evidence at trial showed that on December 22, 2005, Enrique and Maria Avina (Avina and Mrs. Avina) resided in Hawaiian Gardens, and owned a Chevrolet Astro van (van).[1] About 4:30 a.m., before Avina left for work, Mrs. Avina heard a noise outside. Looking out, she saw two men apparently trying to get into her son's car. She and Avina went out, and saw the two men run to where the van was parked, across the street. One of them got inside, while the other ran to the back, en route to the passenger side. Avina blocked this suspect, who pointed a handgun at him. The van drove away, and the suspect outside it ran in the opposite direction. Avina found the van parked on a nearby street a few hours later.

There was no dispute that appellant was one of the carjackers. Both Avinas identified him, at trial and before. They had previously seen him in their neighborhood several times and knew his family, who had come from the same town in Mexico as the Avinas, and lived nearby. However, the Avinas' trial testimony diverged from their pretrial accounts, regarding whether appellant had wielded the gun outside the van, or instead had been the driver.

Immediately after the carjacking, the Avinas were interviewed by Los Angeles Deputy Sheriff Joseph Benjamin, who arrived at their home in response to a 911 call. The deputy testified that he spoke with the Avinas using their broken English and the little Spanish he knew. Avina told him that appellant had stolen their van, accompanied by his brother. Avina stated appellant had pointed a gun at him, causing him to back off, and then had run

---

[1] Because appellant does not challenge his drug conviction, which involved separate events and for which he received a concurrent sentence, we do not state the facts underlying that count.

when the van drove away. The Avinas said that the pistol had resembled Deputy Benjamin's, silver in color. They described appellant as five feet eight to five feet 10 inches tall with a mustache, and stated both men had worn black sweatshirts and tan-brown shorts. They also told the deputy where appellant's family lived.

Two weeks later, on January 3, 2006, Sheriff's Detective Brandt House interviewed the Avinas, separately, at the Lakewood sheriff's station. He testified they spoke English well enough that he did not need to use a Spanish-speaking deputy he had called to interpret. Avina described being alerted to the car tampering by his wife and going outside to respond. When he did, he saw appellant, with a large-caliber semiautomatic weapon—a big silver gun. Detective House had Avina describe the gun and compare it with his own.

Detective House showed Avina a six-pack display containing appellant's photo. Avina identified appellant, and then spontaneously wrote on the exhibit in Spanish, "He is the one that had the gun." Avina told the detective appellant had drawn the gun and told him to "Shut up, motherf---er." Avina also said the second suspect had been a relative of appellant's, possibly his brother. Detective House believed appellant had several brothers; he prepared a six-pack with the only photograph of one that was available, but Avina could not make an identification from it.

During Detective House's interview with Mrs. Avina, she stated that appellant had pointed a large gun at her husband. As Mrs. Avina admitted during her trial testimony, she also identified appellant from a six-pack. Like her husband, Mrs. Avina expressed no confusion about appellant being the one outside the van, who had wielded the gun.

At trial, Avina stated he could not speak any English. Notwithstanding his pretrial statements, he testified that appellant had driven the van, and his accomplice had been the one who pointed something silver at Avina. Avina did not know "if it was a gun or a knife." He claimed not to have told Deputy Benjamin that there had been a gun or other weapon in the accomplice's hand when he pointed his arm at Avina.

Avina acknowledged identifying appellant from the six-pack, and writing on it, "He is the one that had the gun." He explained that he had been mistaken, and very nervous about his immigration status when speaking with Detective House. Avina also denied describing the carjackers to Deputy Benjamin.

Mrs. Avina also testified that she spoke no English, and denied having done so with Deputy Benjamin. She stated appellant had driven the van, while his

accomplice had extended his arm at Avina. She denied seeing a gun, or so telling the deputy or Detective House.

The Avinas also testified to a possible explanation for their changed testimony. Avina stated that before trial Mrs. Avina had told him that someone had telephoned and told her that they could have immigration problems, and should not cooperate with the police. Avina denied this caller had been appellant's father, but he testified that the father had called him, and told him he wanted him to drop the charges. Mrs. Avina testified that appellant's parents had driven her to court for an initial appearance. Appellant's father told her to say she had been confused and had made a mistake about appellant. The parents also told her to say appellant was not the one.[2]

Mrs. Avina testified that she had been—and remained—afraid of appellant's family, and Avina testified he was concerned about his safety. As a result, the Avinas stated, they had changed their residence, and Avina had quit his job. Both Avinas had been jailed for failing to appear pursuant to the prosecution's subpoena.

Appellant's defense was alibi. He denied committing the carjacking, and testified that on the day of the offense he was in an alcohol and drug rehabilitation center, to which he had been admitted on December 12, 2005. He had remained in the three-month, live-in program until March 2006, when he completed it. Appellant admitted, however, that the facility had not been locked or guarded, so that a resident could have gone out at any time. Appellant presented witnesses from the center who confirmed both his enrollment and the possibility of his having left the facility during the program.

## DISCUSSION

In contending that sufficient evidence does not support the finding that he used a firearm, appellant faces a substantial burden. "In reviewing a sufficiency of evidence claim, the reviewing court's role is a limited one. ' "The proper test for determining a claim of insufficiency of evidence in a criminal case is whether, on the entire record, a rational trier of fact could find the defendant guilty beyond a reasonable doubt. [Citations.] On appeal, we must view the evidence in the light most favorable to the People and must presume in support of the judgment the existence of every fact the trier could reasonably deduce from the evidence. [Citation.]" ' [Citations.] [¶] ' "Although we must ensure the evidence is reasonable, credible, and of solid

---

[2] According to a district attorney's investigator, Mrs. Avina had made consistent statements to him while in custody for failure to appear as a witness.

value, nonetheless it is the exclusive province of the trial judge or jury to determine the credibility of a witness and the truth or falsity of the facts on which that determination depends." ' " (*People v. Smith* (2005) 37 Cal.4th 733, 738–739 [37 Cal.Rptr.3d 163, 124 P.3d 730].)

Avina's and Mrs. Avina's statements to the sheriff's officers that appellant was the one who used the gun in the carjacking—admissible for their truth under Evidence Code section 1235—constituted substantial evidence of that use. Although the Avinas changed their attribution of the gun use at trial, after experiencing pressure and fear about implicating appellant, it was the jury's function to decide which of these versions was credible. The jury could and did rationally credit the Avinas' consistent original accounts, rendered near the time of the crime and before appellant's family intervened.

Appellant argues that the Avinas' identifications of him fail the substantial evidence test in light of factors discussed in *Cuevas, supra,* 12 Cal.4th 252. *Cuevas* repudiated the holding of *People v. Gould* (1960) 54 Cal.2d 621 [7 Cal.Rptr. 273, 354 P.2d 865], that an extrajudicial identification, without a confirming identification at trial or other corroboration, is insufficient to sustain a conviction. *Cuevas* ruled instead that the substantial evidence rule should govern the sufficiency of an out-of-court identification.

 Appellant points, first, to *Cuevas*'s citation of the following factors that may attend and enhance the probative value of out-of-court identifications: "(1) the identifying witness's prior familiarity with the defendant; (2) the witness's opportunity to observe the perpetrator during the commission of the crime; (3) whether the witness has a motive to falsely implicate the defendant; and (4) the level of detail given by the witness in the out-of-court identification and any accompanying description of the crime." (*Cuevas, supra,* 12 Cal.4th at p. 267.)

 But in fact, the Avinas' identifications of appellant as the gunman were attended by most if not all of the four *Cuevas* supporting factors. The Avinas had prior knowledge of appellant and his appearance; they had a distinct opportunity to observe him during the gun use; and there was no demonstrated motive for them to implicate appellant falsely (although there was a motive to exonerate him falsely). (See *Cuevas, supra,* 12 Cal.4th at p. 267.) Moreover, the "level of detail" in the identification of appellant was more than minimal. (*Ibid.*)

In his reply brief, appellant adduces a further list of factors, which *Cuevas* identified as "relating to the witness's failure to identify the defendant at trial." (*Cuevas, supra,* 12 Cal.4th at p. 267.) Those factors are set forth

below.[3] Most of these factors do not point peculiarly for or against the credibility of the Avinas' renunciations of their original identifications of appellant as the gunman. However, there was strong evidence of intervening witness fear and intimidation, as well as an implied understanding that to confirm the identifications of appellant would result in his suffering a serious penalty.

We conclude that the Avinas' repeated, consistent out-of-court identifications constituted substantial evidence—reasonable, credible, and of solid value—of appellant's use of a firearm in the carjacking. (*Cuevas, supra,* 12 Cal.4th at p. 277.) Further, both Avinas acknowledged their earlier out-of-court identifications of appellant as the gunman. The credibility of their explanations for the alleged mistakes was for the jury to weigh against the substantial evidence of witness intimidation by appellant's family.

In its brief, respondent requests that we order the abstract of judgment corrected, in four respects. Appellant does not oppose these corrections, and we find them appropriate. The first three changes comprise the following matters of form: (1) the statement of the carjacking offense should be changed from "Take Motor Veh in Poss of Other" to "Take Motor Veh by Force or Fear"; (2) the reference to count 2 should specify the statute and its description; and (3) the court's requirement of a DNA test under section 296 should be shown.

The final requested correction of the abstract requires a modification of the judgment. The court imposed, and the abstract reflects, a $20 court security fee, under section 1465.8, subdivision (a)(1). But because appellant was convicted on two counts, two such fees should have been imposed. (*People v. Schoeb* (2005) 132 Cal.App.4th 861, 865–867 [33 Cal.Rptr.3d 889].) We will modify the judgment and direct correction of the abstract accordingly.

## DISPOSITION

The judgment is modified by imposing two $20 court security fees under section 1465.8, subdivision (a)(1). As modified, the judgment is affirmed. The

---

[3] "(1) [W]hether the identifying witness admits, denies, or fails to remember making the out-of-court identification; (2) whether the witness remembers the underlying events of the crime but no longer believes in the accuracy of the out-of-court identification; (3) whether, if the witness claims the identification was false or erroneous, the witness offers an explanation for making a false or erroneous identification; (4) whether, if the witness claims a failure of recollection, there are reasons supporting the loss of memory; (5) whether there is evidence that the witness's failure to confirm the identification in court resulted from the witness's appreciation that doing so would result in the defendant's conviction; or (6) whether there is evidence that . . . the witness's failure to confirm the identification arises from fear or intimidation." (*Cuevas, supra,* 12 Cal.4th at pp. 267–268.)

superior court shall prepare and transmit to the appropriate authorities a new abstract of judgment, amended as follows: (1) by stating a $40 court security fee; (2) by stating the offense under Penal Code section 215, subd. (a) to be "Take Motor Veh by Force or Fear"; (3) by beginning the reference to count 2 with, "Health & Safety Code section 11550, subd. (a), being under the influence of a controlled substance"; and (4) by checking the box ordering a DNA test under Penal Code section 296.

Rubin, Acting P. J., and Bigelow, J., concurred.