Filed 12/16/13  P. v. Crawley CA2/7

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SEVEN

| | |
|---|---|
| THE PEOPLE, | B243199 |
| Plaintiff and Respondent, | (Los Angeles County |
| v. | Super. Ct. No. MA045326) |
| TRAVIS L. CRAWLEY, | |
| Defendant and Appellant. | |

APPEAL from an order of the Superior Court of Los Angeles County, Hayden A. Zacky, Judge.  Affirmed.

Christine J. Esser, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Lance E. Winters, Assistant Attorney General, Linda C. Johnson and Gary A. Lieberman, Deputy Attorneys General, for Plaintiff and Respondent.

_____

While on probation after pleading no contest in 2009 to one count of second degree robbery, Travis L. Crawley was charged with residential burglary. Crawley was found not guilty after a jury trial; but the court, based upon the same evidence, found he had violated his probation and imposed the previously suspended five-year prison term for robbery. Crawley appeals, contending the evidence was insufficient to support a finding he had violated his probation and the trial court abused its discretion and violated his right to due process by failing to credit the eyewitness's in-court testimony that Crawley was not one of the burglars. We affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

1. *Crawley's Prior Robbery Conviction and the Subsequent Burglary Charge*

In April 2009 Crawley was charged with two counts of second degree robbery (Pen. Code, § 211), each with a criminal street gang enhancement (Pen. Code, § 186.22, subd. (b)(1)(C)). Pursuant to a negotiated agreement, Crawley pleaded no contest to one count of robbery and the remaining count and special allegations were dismissed. Crawley was sentenced to five years in state prison; execution of sentence was stayed; and Crawley was placed on probation for five years on various terms and conditions including serving 166 days in county jail and performing 20 days of work for Caltrans.[1]

In a criminal complaint filed October 20, 2011 Crawley was charged with having committed first degree residential burglary (Pen. Code, § 459) on October 7, 2011. Crawley was arraigned on November 17, 2011 and pleaded not guilty. On the same date Crawley's probation was summarily revoked based on the burglary charge. The hearing on the probation violation was continued pending resolution of the criminal charge.

At the outset of trial on the burglary charge, the court advised Crawley and his counsel it would be considering the evidence presented not only for purposes of the new criminal charge itself but also to determine whether Crawley had violated his probation.

---

[1] Crawley admitted probation violations in 2010 and 2011. On each occasion probation was reinstated with additional terms (either additional Caltrans service or county jail time).

2

2. *The Evidence at the Burglary Trial*

Vikkii Nunley and Crawley were friends. Crawley spent the night of October 6, 2011 at Nunley's apartment in Lancaster but ultimately declined the invitation to go the following morning to Las Vegas with Nunley, her boyfriend and another friend to celebrate Nunley's birthday, explaining he needed to work. When Nunley returned home on Sunday evening, October 9, 2011, she found her front door, which she had locked when she left, kicked in. The flat-screen television from her upstairs bedroom and a gold ring, which had been in a box on the counter in her bathroom, were missing. Nunley called the police emergency number.

On October 10, 2011 Nunley spoke to her next-door neighbor, Jamal Flanagan, who told her he had seen two men carrying her television out through the walkway. Flanagan said he had called the police and made a report. Nunley asked Flanagan what the men looked like and, according to Nunley, "He said he didn't see one, but one of them was light-skinned and I was just with him." However, Flanagan did not know who it was. Nunley then went to her Facebook page, reviewed the photographs of her friends to see who matched that description and came to Crawley's. She showed Flanagan two photographs but apparently specifically asked him if Crawley was the individual he had seen. Flanagan said yes.

On October 18, 2011 Los Angeles Sheriff's Deputy Julia Vezina showed Flanagan a photographic lineup (a "six-pack"), and he quickly identified Crawley as one of the two men involved in the burglary. According to Flanagan, Crawley had acted as the lookout, and the other individual had carried the television away from Nunley's apartment. The two men then escaped with the television over the wall of the bordering complex. When Deputy Vezina contacted Flanagan a short time later regarding an attempt to identify the second suspect, Flanagan told the deputy he was no longer interested in assisting with the case and refused to meet with her.

Deputy Vezina arrested Crawley on October 18, 2011. Prior to being questioned, Crawley was advised of his right to remain silent, to the presence of an attorney, and, if

3

indigent, to appointed counsel. (*Miranda v. Arizona* (1966) 384 U.S. 436 [86 S.Ct. 1602, 16 L.Ed.2d 694].) Crawley told Deputy Vezina he had been working with Carlos Rivera, his boss, doing renovation work on two houses at the time of the burglary. When Deputy Vezina called the phone number Crawley provided for Rivera, Crawley's brother answered. The following day Deputy Vezina interviewed Rivera at a home (apparently where he was working); both Crawley's brother and his mother were present when the deputy arrived, and Rivera appeared very nervous.

Virgil Carter testified he saw two young (between 17 and 20 years old), African-American males walking through the carport of the apartment complex carrying a large television sometime before noon on October 7, 2011. They were each wearing a hoodie and blue jeans. He saw them a second time without the television set.

A recording of Flanagan's telephone call with the police emergency operator on the morning of the burglary was played for the jury. At 10:20 a.m. Flanagan reported he just saw somebody steal a television, "They're, they're walking away now." Flanagan gave the address of the apartment complex and said he was not sure which apartment they had come from. As he was talking, the individuals hopped the gate to the apartment complex just behind his. The operator then asked for a description and specifically inquired, "Black, White, Hispanic?" Flanagan replied, "Two Black guys. One of them, umm, they're both light skinned, one of them had a brown, I mean a grey hoodie on and a yellow and grey hat. They both had blue jeans on."

At trial Flanagan acknowledged he had been outside his apartment when he saw two young men, one with a television, running away and had made the emergency call in response, but added, "I don't remember in detail, though . . . ." Flanagan spoke to a police officer shortly after the emergency call, but insisted he did not remember what he had said. Shown a copy of a report with his statement describing in detail the suspects and the television set they were carrying, as well as their escape route, Flanagan conceded he must have said what was recorded in the report, but again insisted he did not remember. During his testimony Flanagan interjected several times and then testified

4

directly that, although Crawley fit the description he had given, he was not the person he had seen walking away with the television. ("The dude that I saw, that's not him right there.")

Flanagan claimed he had not identified Crawley to Nunley when she showed him Crawley's Facebook picture and explained, when he had identified Crawley in the photographic lineup, he simply was "[g]oing off" the Facebook photograph and Nunley's insinuation that Crawley had been involved in the burglary. (Flanagan claimed he did not tell Detective Vezina about Facebook because she had not asked him.) Flanagan also testified he had seen Crawley's brother, Tevin Crawley, several days before his trial testimony and Tevin, not Travis Crawley, was the one Flanagan had seen with the television. Flanagan denied he had been threatened with respect to his testimony or possible identification of the individuals involved in the burglary.

Police reports indicated the burglary occurred between 10:20 a.m. and 10:30 a.m. on October 7, 2011. Cell phone records showed six calls on Crawley's cell phone between 10 a.m. and 11 a.m., all of which had been relayed from a tower two blocks from Nunley's apartment complex. Different towers would have been reflected for those calls if Crawley had actually been at the two work sites he identified and his cell phone was with him at the time.

Crawley did not testify in his defense. He presented the testimony of a friend of Nunley's, Shatera Harris, who said Nunley had told her about a year before the burglary the ring (which had belonged to Nunley's grandmother) was missing. Harris also testified the television set in Nunley's bedroom was broken prior to the burglary. Finally, Harris said she had seen Nunley hug Crawley about a week before he was arrested and say, "I'm sorry, I didn't mean to blame you. I know it wasn't you . . . ." The defense also called Tracy Stewart, a community service officer with the sheriff's department in Lancaster. Stewart testified on October 10, 2011 she had interviewed Flanagan, who described the suspects as a Black female with a light complexion and a Black male, also with a light complexion and wearing a hoodie.

5

The court's minute order of June 27, 2012 indicates the jury retired to commence deliberations at 9:42 a.m. At 11:20 a.m. the jury informed the court it had reached a verdict. The jury found Crawley not guilty of burglary.

3. *The Probation Revocation Hearing*

No additional evidence was presented at the probation revocation hearing, which was held on June 29, 2012, two days after the jury returned its not guilty verdict in the criminal trial. The court gave its tentative ruling that Crawley had committed the burglary and thus violated his probation, briefly reviewing the evidence and indicating its view that Flanagan had lied on the witness stand. The court also cited *In re Coughlin* (1976) 16 Cal.3d 52, a unanimous Supreme Court decision that held, "[T]he fact of an acquittal establishes only that the trier of fact entertained a reasonable doubt of defendant's guilt. . . . [S]uch a doubt, of itself, would not preclude revocation of probation." (*Id*. at p. 59.)

After giving the People and defense counsel an opportunity to argue, the court found, by a preponderance of the evidence, that Crawley was in violation of probation. The court imposed the previously suspended five year prison term for the prior robbery conviction.

## CONTENTIONS

Because Flanagan testified at trial that Crawley was not one of the burglars and the jury found Crawley not guilty of the crime, Crawley contends (a) the evidence was insufficient to support the court's finding of a probation violation, and (b) rejection of Flanagan's testimony and reliance instead on his out-of-court, hearsay identifications of Crawley was an abuse of discretion and violated his right to due process.

## DISCUSSION

1. *Substantial Evidence Supports the Decision To Revoke Probation*

A court may revoke probation "if the interests of justice so require and the court, in its judgment, has reason to believe from the report of the probation or parole officer or otherwise that the person has violated any of the conditions of his or her probation . . . ."

6

(Pen. Code, § 1203.2, subd. (a); see *People v. Galvan* (2007) 155 Cal.App.4th 978, 981; *People v. Stanphill* (2009) 170 Cal.App.4th 61, 72.) We review a decision to revoke for substantial evidence (*People v. Superior Court* (*Jones*) (1998) 18 Cal.4th 667, 681),[2] according great deference to the trial court's ruling, "bearing in mind that '[p]robation is not a matter of right but an act of clemency, the granting and revocation of which are entirely within the sound discretion of the trial court.'" (*People v. Urke* (2011) 197 Cal.App.4th 766, 773; accord, *People v. Pinon* (1973) 35 Cal.App.3d 120, 123.) "Before a defendant's probation may be revoked, a preponderance of the evidence must support a probation violation." (*People v. Shepherd* (2007) 151 Cal.App.4th 1193, 1197; accord, *People v. Rodriguez* (1990) 51 Cal.3d 437, 447 [standard of proof for finding probation violation is preponderance of the evidence].)

Here, as discussed, the same judge presided at the burglary trial and the probation revocation hearing. The evidence before the court, although not sufficient to persuade the jury to find Crawley guilty, amply supported the finding, by a preponderance of the evidence, that he had in fact committed burglary and thus violated his probation. The court explained it found Flanagan's pretrial statements to Nunley and Deputy Vezina identifying Crawley as one of the two perpetrators to be reliable and rejected Flanagan's in-court disavowal of those identifications as not credible.[3] The court's credibility

---

[2] "The standard of appellate review for determining the sufficiency of the evidence is settled." "In conducting such a review, we '"presume[] in support of the judgment the existence of every fact the trier could reasonably deduce from the evidence." [Citation.]' [Citations.] 'Conflicts and even testimony which is subject to justifiable suspicion do not justify the reversal of a judgment, for it is the exclusive province of the trial judge or jury to determine the credibility of a witness and the truth or falsity of the facts upon which a determination depends. [Citation.] We resolve neither credibility issues nor evidentiary conflicts; we look for substantial evidence.'" (*People v. Lee* (2011) 51 Cal.4th 620, 632.)

[3] In the words of the court, "In my opinion, Jamal Flanagan was the definition . . . of a recanting witness who got up there on the stand and clearly, in my opinion, lied to the jury. . . . [H]e must have volunteered at least a dozen times that you were not the guy. . . . [I]t didn't fool me." The court also questioned Flanagan's explanation he had identified Crawley only because Nunley had shown him Crawley's Facebook photo and suggested

determination, uniquely its to make in any event, was reinforced by Deputy Vezina's testimony regarding Flanagan's initial cooperation followed by his announcement that he was no longer willing to assist the police and his refusal to meet with her a second time. Nunley's testimony that Flanagan told her, before she showed him any photographs, that she was "just with him" when discussing the young, light-skinned, African-American male burglar further supported the reliability of the out-of-court identifications. Finally, the court also found the cell phone records, which placed Crawley (or at least his cell phone) close to the site of the burglary when he claimed to be some distance away, "powerful evidence" of his guilt.[4] No more was required.

The two out-of-court identifications were admissible under Evidence Code section 1235 once Flanagan testified inconsistently with those statements at trial. (See *People v. Hawthorne* (1992) 4 Cal.4th 43, 55, fn. 4 [prior inconsistent statements are admissible under Evid. Code, § 1235 to prove their substance as well as to impeach the declarant].)[5] And it is now well-established even a single out-of-court identification without additional corroboration may be sufficient to sustain a finding an individual committed a crime. (*People v. Cuevas* (1995) 12 Cal.4th 252, 257; see *People v. Roa* (2009) 171 Cal.App.4th 1175, 1180.)

As the trial court explained at the revocation hearing, an acquittal at a criminal trial does not preclude revocation of probation based upon evidence that the defendant/probationer committed the offense. (*In re Coughlin, supra,* 16 Cal.3d at p. 52;

---

he was one of the perpetrators, noting Flanagan "never told the deputy that the reason he picked you is only because he saw you on Facebook."

[4] "[T]hen the phone records came in, and [the prosecutor] . . . was able to put . . . that number that you gave deputies to a cell tower within close proximity to the burglary. And to me, that was very powerful evidence because had you been working where you said you were, your cell phone would have pinged off a different cell site miles . . . away."

[5] Crawley concedes Flanagan's out-of-court identifications were admissible under Evidence Code section 1235 but disputes their reliability because, in his view, they were not corroborated by other evidence.

see *People v. Towne* (2008) 44 Cal.4th 63, 84 [discussing *In re Coughlin*].)  Contrary to Crawley's argument, *People v. Robart* (1973) 29 Cal.App.3d 891, a case discussed and distinguished by the Supreme Court in *In re Coughlin*, does not require a different result.

In *Robart* probation was revoked following an acquittal on new charges "*without holding any hearing whatever* on the nature of the underlying evidence." (*In re Coughlin, supra*, 16 Cal.3d at p. 58.)  The appellate court properly reversed that finding, the Supreme Court held, but did not establish a rule that an acquittal bars the court from considering the underlying evidence in the case to establish a ground for revocation of probation. (*Ibid*.)  That is, a court revoking probation "cannot rely solely upon the filing of a criminal charge against a defendant, once he has been acquitted of those charges" (*ibid*.), but is not precluded from considering at a probation revocation hearing evidence concerning that offense. (*Id.* at p. 59.)

Here, unlike in *Robart,* a separate revocation hearing was held.  The trial court, which had heard all the evidence, provided a tentative ruling that outlined its views supporting revocation of probation and gave counsel a full opportunity to argue.  The procedure followed was entirely proper.  By reason of the difference in standards of proof in criminal and probation revocation proceedings, there is no case law or policy justification for concluding Crawley's acquittal by the jury prevented the court from considering the same underlying facts to find a violation.  Given the extreme deference we pay to the trial court's credibility determinations, Crawley's claim of insufficient evidence must be rejected.

2. *Crawley's Due Process Claim Lacks Merit*

Crawley's due process argument—one not raised during the revocation proceedings and, therefore, forfeited (see *People v. Polk* (2010) 190 Cal.App.4th 1183, 1194 [failure to object on ground asserted on appeal results in forfeiture even if defendant asserted other arguments])—is in reality a replay of his substantial evidence challenge to the finding of a probation violation.  Crawley insists the court ignored or improperly disregarded Flanagan's in-court testimony and/or improperly relied upon Flanagan's false

9

out-of-court identifications (labeled "false" only because Flanagan subsequently testified they were not true). Those credibility determinations were properly for the court to make. There was no abuse of discretion or due process violation.

## DISPOSITION

The order revoking probation and imposing the previously stayed state prison sentence is affirmed.


PERLUSS, P. J.

We concur:


WOODS, J.


ZELON, J.

10