Filed 10/25/24  P. v. Cooper CA4/1

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA


| | |
|---|---|
| THE PEOPLE, | D082001 |
| Plaintiff and Respondent, | |
| v. | (Super. Ct. No. SCD295921) |
| DANTEA TERRELL COOPER, | |
| Defendant and Appellant. | |

APPEAL from a judgment of the Superior Court of San Diego County, Joan P. Weber, Judge.  Affirmed as modified and remanded with directions.

Steven S. Lubliner, under the appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Arlene A. Sevidal and Andrew Mestman, Deputy Attorneys General for the Plaintiff and Respondent.

Defendant Dantea Terrell Cooper challenges the jury's guilty verdicts on counts of robbery and battery with serious bodily injury (SBI). Cooper claims both counts lacked substantial evidentiary support and were tainted by prejudicial misinstruction of the jury. We decline to disturb the jury's verdicts on these counts. Additionally, we modify the judgment to reflect the fee and assessments the trial court was required to impose and, as modified, we affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

Cooper was charged with six felony counts stemming from four separate incidents. His arguments on appeal focus on two of those incidents: an August 2022 robbery charged in count 2 (Penal Code, § 211[1]) and a September 2022 battery with SBI charged in count 4 (§ 243, subd. (d).)[2]

The robbery charged in count 2 occurred at a San Diego area supermarket. While being rung up for a container of hardboiled eggs, Cooper slapped the cashier in the face, picked up eggs he had not paid for, and walked toward the exit. A customer confronted Cooper inside the store about ten feet from the checkstand, and Cooper responded by throwing the eggs on the floor, briefly squaring up to the customer, and then leaving the store empty handed. Although the surveillance videos from the store cameras clearly showed that Cooper had not paid for the eggs, he testified that he did. Based on Cooper's testimony, the judge instructed the jury on the mistake-of-fact defense, i.e., if the jury believed that Cooper thought he had paid for the

---

[1] All subsequent undesignated statutory references are to the Penal Code.

[2] The jury also found Cooper guilty of two other robbery charges, another battery charge, and an attempted making of a criminal threat. It acquitted him of a third battery charge as well as the lesser included offense of assault.

eggs, he could not be guilty of robbery. (CALCRIM No. 3406.) The judge read this instruction, but inadvertently failed to include a copy of it in the packet of written instructions she provided to the jury.

The battery with SBI charged in count 4 resulted from a scuffle that Cooper instigated on a commuter train traveling through San Diego County. After seeing Cooper knock some papers out of the hands of a woman standing nearby, a male bystander intervened to tell Cooper not to hit women. The woman, an eyewitness, and the bystander all testified that Cooper responded by punching the bystander. The bystander testified that he retaliated by punching Cooper. For his part, Cooper testified that the bystander hit him first and that he punched the bystander twice while being taken to the ground by the eyewitness.

The asserted basis for the SBI was because the bystander injured his right hand when he hit Cooper. At trial, which was five months later, the bystander testified that he was diagnosed right after the incident with fractures to his fourth knuckle and the pinky bone all the way to his wrist. The bystander also testified that he was still dealing with nerve damage from the injury.

To convict Cooper on battery (count 4), the jury was instructed that one of the elements the People needed to prove beyond a reasonable doubt was that he did not act in defense of self or others during his scuffle with the bystander. (CALCRIM No. 925.) The court also gave the general self-defense instruction found at CALCRIM No. 3470. There was a discrepancy, however, between the judge's oral and written instructions: the verbal instruction stated that it applied to count 4, whereas the written copy the jury received did not mention this count.

3

Following the jury's verdict, Cooper was sentenced to five years total custody for his six convictions and ordered to pay $5,405.64 in restitution to the bystander in count 4. The judge did not orally impose any additional fines or assessments during the sentencing hearing. But both the abstract of judgment and minute order note the following: (1) a $10,000 restitution fine under section 1202.4, subdivision (b); (2) a $10,000 parole revocation restitution fine under section 1202.45; (3) a $41 fine under section 1202.5; (4) a $240 court operations assessment under section 1465.8; and (5) a conviction assessment of $180 under Government Code section 70373. The People did not call the court's attention to its failure to orally impose these fines and assessments during sentencing.

## DISCUSSION

Cooper challenges his convictions of robbery in count 2 and battery with SBI in count 4 on the grounds that neither conviction was supported by substantial evidence. Alternatively, he requests a new trial on both counts because of perceived prejudicial discrepancies between the court's oral and written jury instructions. Finally, he asks that we strike from the abstract of judgment and minute order certain fines and assessments not orally imposed during sentencing.

1. ***The jury's verdict on robbery (count 2) neither lacked substantial evidentiary support nor was tainted by a prejudicial instructional error.***

"Robbery is the felonious taking of personal property in the possession of another, from his person or immediate presence, and against his will, accomplished by means of force or fear." (§ 211.) The "taking" required for a robbery has two elements: "gaining possession of the victim's property and asporting or carrying away the loot." (*People v. Cooper* (1991) 53 Cal.3d 1158, 1165.) Cooper's first claim is that the asportation element of robbery was not

4

supported by substantial evidence because he dropped the eggs inside the store ten feet from the checkstand.  But the law, as both Cooper and the People recognize, is that asportation can be established by only slight movement of a store's property, even if the defendant fails to carry it out of the store.  (See, e.g*., Cooper*, at p. 1165; *People v. Pham* (1993) 15 Cal.App.4th 61, 65; *People v. Thompson* (1958) 158 Cal.App.2d 320, 323.)  Here, the surveillance videos plainly showed Cooper's movement of the supermarket eggs, and, as such, constitute " 'substantial evidence—that is, evidence which is reasonable, credible, and of solid value' "—to support a finding beyond a reasonable doubt that the asportation element was met.  (*People v. Johnson* (1980) 26 Cal.3d 557, 578 (*Johnson*).)

Even if we conclude that robbery (count 2) was supported by substantial evidence, Cooper believes he is entitled to a new trial because the judge omitted the mistake-of-fact instruction from the jury's packet of written instructions.  In his view, this omission prevented the jurors from fully crediting his testimony that he paid for the eggs.  The People counter that this error was harmless because the jury did not ask for a copy of this instruction and there was no reasonable probability that a written copy would have made a difference given the irrefutable nature of the surveillance videos showing that Cooper did not pay for the eggs.  We agree with the People's reasoning.

A jury is not automatically statutorily entitled to receive copies of written jury instructions.  (§ 1093, subd. (f).)  It is, of course, a recommended practice that most judges follow, and a court must provide them when requested by the jury.  (*Ibid.*)  Where the court chooses to provide a purportedly complete packet of instructions, but one or more of the instructions is missing, we apply the harmlessness test from *People v.*

*Watson* (1956) 46 Cal.2d 818 (*Watson*). (See *People v. Trinh* (2014) 59 Cal.4th 216, 235 (*Trinh*).)

Accordingly, we ask whether there was a reasonable probability of a more favorable outcome if a written copy had been included in the jury packet. (*Trinh, supra,* 59 Cal.4th at p. 235.) In answering this question, we presume the jury heard and understood the oral mistake-of-fact instruction. (*Ibid.*) Cooper points to nothing in the record rebutting this presumption, such as evidence of confusion on the jury's part. (*Ibid.*) Moreover, because the surveillance videos clearly showed that Cooper did not pay for the eggs, there is no reasonable probability that a written copy of this instruction would have changed the jury's verdict on count 2.

**2. *The jury's verdict on battery (count 4) neither lacked substantial evidentiary support nor was tainted by a prejudicial instructional error.***

Section 243, subdivision (f)(4) defines a SBI as a "serious impairment of physical condition . . . including, but not limited to . . . bone fracture . . . ." Cooper claims that the jury's verdict on count 4 cannot stand because its finding that the bystander suffered a SBI was not supported by substantial evidence. Referring to the principle that "bone fractures exist on a continuum of severity from significant and substantial to minor" (*People v. Nava* (1989) 207 Cal.App.3d 1490, 1496), Cooper maintains that a fracture is not necessarily a SBI because not all fractures result in a "serious impairment of physical condition." (§ 243, subd. (f)(4)).) As Cooper correctly points out, there was no testimony about the bystander's prognosis, which he contends was needed to show substantial physical impairment.

For their part, the People read section 243, subdivision (f)(4) to mean that a bone fracture automatically constitutes SBI. Considering that the Supreme Court has endorsed the idea that fractures exist on a continuum of

6

severity when it comes to SBIs, we agree with Cooper that evidence of the existence of a bone fracture alone may not be enough to establish one. (*In re Cabrera* (2023) 14 Cal.5th 476, 489; *People v. Santana* (2013) 56 Cal.4th 999, 1010.) Nonetheless, we will not disturb the jury's verdict on this count.

As noted, the substantial evidence standard is satisfied if there was "evidence which is reasonable, credible, and of solid value —such that a reasonable trier of fact could find the defendant guilty beyond a reasonable doubt." (*Johnson*, *supra*, 26 Cal.3d at 578.) Under this standard, we view the evidence in the light most favorable to the prosecution (*People v. Jennings* (2010) 50 Cal.4th 616, 638–639), and we "accept logical inferences that the jury might have drawn from the circumstantial evidence" (*People v. Maury* (2003) 30 Cal.4th 342, 396). We also presume that the jurors "viewed the evidence through the prism of their life experience." (*In re Manriquez* (2018) 5 Cal.5th 785, 815.)

Against this backdrop, Cooper fails to persuade us that count 4 was unsupported by substantial evidence. We have no reason to question the veracity of the bystander's testimony about the types of injuries he sustained, nor are we able to question the weight the jurors gave that testimony. (Evid. Code, § 312.) What we can say is that when considered in the context of the jurors' life experience, the bystander's credible testimony could lead the jury to reasonably find that multiple fractures in his hand, with long-lasting (and potentially permanent) nerve damage, constituted a serious physical impairment that amounted to the level of SBI. (Cf. *People v. Hicks* (1982) 128 Cal.App.3d 423, 429 [judgment will be set aside for insufficient evidence only if clear "that on no hypothesis whatever is there sufficient substantial evidence to support the verdict of the jury"].)

7

In the event we find sufficient evidence for this conviction, Cooper claims he is entitled to a new trial because of another perceived prejudicial error in the jury instructions. He asserts that because the written version of the self-defense jury instruction did not refer to count 4, jurors were prevented from fully crediting his testimony that the bystander punched him first. The People maintain that the error was harmless mainly because the self-defense instruction was read correctly to the jury and the evidence showed that Cooper was not defending himself during the scuffle. Again, we agree with the People that the error was harmless.

When "a discrepancy exists between the written and oral versions of the jury instructions, the written instructions provided to the jury will control." (*People v. Wilson* (2008) 44 Cal.4th 758, 803 (*Wilson*).) To resolve a jury misinstruction claim, we "assess the instructions as a whole, viewing the challenged instruction in the context of other instructions, in order to determine if there was a reasonable likelihood the jury applied the challenged instruction in an impermissible manner." (*Ibid.*) As before, we apply the *Watson* test for harmlessness, keeping in mind the presumption that the jurors understood and followed the court's instructions. (*Wilson,* at p. 803.) Accordingly, we ask whether there was a reasonable probability that the jury would have reached a more favorable result if the written self-defense instruction correctly mentioned count 4. (*Watson*, *supra*, 46 Cal.2d at p. 836.)

There was no reasonable probability of a better outcome for Cooper in this hypothetical scenario. The trial court's oral instruction on self-defense was correct, and "[a]lthough this court gives priority to the written version of the instruction when a conflict exists between the written and oral versions, the jury is not informed of this rule." (*Wilson*, *supra*, 44 Cal.4th at p. 804.)

8

"It is thus possible that the jury followed the oral instruction." (*Ibid.*) Further, the jurors submitted one note during their deliberations, and it had nothing to do with self-defense. This indicates that they did not notice "the slight difference between the written and oral version" of the self-defense instruction. (*Ibid.*) Finally, all the witnesses but Cooper testified that he punched the bystander first, making it unlikely the jurors would accept Cooper's version and reject the testimony of the others. Taken together, these points lead us to conclude that the outcome would have been the same if the self-defense instruction had referred to count 4.

3. ***The judgment is modified to impose the mandatory fee and assessments.***

The judge's oral pronouncement of Cooper's sentence failed to impose the fines and assessments noted in the abstract of judgment and minute order. (See *ante*, at p. 4.) Citing the principles that the rendition of judgment is an oral pronouncement (*People v. Mesa* (1975) 14 Cal.3d 466, 471) and the court's oral pronouncement controls when it conflicts with the abstract of judgment or minute order (*People v. Zackery* (2007) 147 Cal.App.4th 380, 385 (*Zackery*)), Cooper requests that we strike the fines and assessments from those documents. He further maintains that the People's failure to object to the court's omission of the restitution fine and parole revocation restitution fine during the oral pronouncement of his sentences results in a forfeiture of this issue. For their part, the People request a remand to give the judge an opportunity to orally address the restitution fine and probation revocation restitution fine, but they concur with Cooper that the remaining fines must be stricken. We take a tack different from the one either party recommends: we strike the restitution fine and parole revocation restitution fine and modify the judgment to impose the remaining fine and assessments.

We start with the restitution and parole revocation restitution fines. Section 1202.4, subdivision (b) requires a restitution fine be imposed in every case resulting in a conviction unless the court "finds compelling and extraordinary reasons for not doing so, and states those reasons on the record." When a sentence includes both a term of parole and a restitution fine, the court must also impose a parole revocation restitution fine in the same amount as the restitution fine. (§ 1202.45, subd. (a).) The quoted portion of section 1202.4, subdivision (b) makes the imposition of a restitution fine—and by extension a probation revocation restitution fine when one is required—a "discretionary sentencing choice" to which a party must object to preserve the issue for appellate review. (*People v. Tillman* (2000) 22 Cal.4th 300, 303 (*Tillman*).) Because the People did not object to the court's omission of these fines from its oral pronouncement of sentence, the correct remedy is to strike the restitution fines.[3] (*Tillman*, at p. 303.)

As for the fine under section 1202.5 and assessments under section 1465.8 and Government Code section 70373, we may modify the judgment to include them because they are mandatory and are imposed in statutorily determined amounts. (*People v. Talibdeen* (2002) 27 Cal.4th 1151, 1157; *People v. Smith* (2001) 24 Cal.4th 849, 853.) Neither party contends these fee and assessments were not supposed to be imposed or are calculated incorrectly on the abstract of judgment and the minute order. Other Courts of Appeal have regularly modified judgments to include mandatory fines and

---

[3]     In *Zackery, supra,* 147 Cal.App.4th 380, cited by both parties, the abstract of judgment noted a restitution fine and a parole revocation restitution fine that were not orally pronounced. The court remanded the case for the trial court to consider whether to impose these fines. (*Id.* at p. 394.) *Zackery*, however, did not discuss *Tillman*, a Supreme Court case directly on point that we must follow.

assessments that were not orally pronounced.  (See, e.g., *People v. White* (2014) 230 Cal.App.4th 305, 308–309, 321; *People v. Zanoletti* (2009) 173 Cal.App.4th 547, 560; *People v. Camacho* (2009) 171 Cal.App.4th 1269, 1271, 1276; *People v. Roa* (2009) 171 Cal.App.4th 1175, 1181–1182; *People v. Valencia* (2008) 166 Cal.App.4th 1392, 1396.)  We see no reason to take a different approach here.

## DISPOSITION

The judgment is modified to impose a $41 fine under section 1202.5, a $240 court operations assessment under section 1465.8, and a conviction assessment of $180 under Government Code section 70373.  The superior court is directed to strike from the abstract of judgment and the minute order the $10,000 restitution fine under section 1202.4, subdivision (b) and the $10,000 parole revocation restitution fine under section 1202.45.  The superior court shall forward the amended abstract to the Department of Corrections and Rehabilitation.  In all other respects, the judgment is affirmed.

DATO, Acting P. J.

WE CONCUR:


BUCHANAN, J.


KELETY, J.

11