Filed 6/23/14  P. v. Quinteros CA3

<u>NOT</u> <u>TO</u> <u>BE</u> <u>PUBLISHED</u>

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Yolo)

|  |  |
|---|---|
| THE PEOPLE,<br><br>        Plaintiff and Respondent,<br><br>    v.<br><br>GUBANI RODERICO-ROSALES QUINTEROS,<br><br>        Defendant and Appellant. | C074831<br><br>(Super. Ct. No. CR-F-12-2870) |

On August 8, 2011, defendant Gubani Roderico-Rosales Quinteros drove a large truck southbound on Interstate 5 in Yolo County at approximately 70 miles per hour. After failing to slow or stop at a road construction site, he caused a multiple vehicle collision in which three people were killed and others were injured.  Defendant gave responding officers a false name that he had been using for 15 years.  His repeated uses of another person's identity spawned the 20 charges that are at issue in this appeal.

Following a jury trial that ended without any valid verdicts being returned, the parties waived trial by jury and stipulated that the trial court could consider the evidence presented at the jury trial.  The evidentiary portion of the court trial was relatively brief with little cross-examination and no further defense presented.  The court found

1

defendant guilty on 38 counts including 14 counts of using another person's identifying information without that person's consent ("unauthorized use"; Pen. Code, § 530.5, subd. (a);[1] counts 4, 13, 17, 19, 21, 23, 25, 28, 30, 32, 34, 36, 38, & 40) and nine counts of second degree burglary (§§ 459, 460, subd. (b); counts 16, 20, 24, 27, 31, 33, 35, 37, & 39) in which he entered Department of Motor Vehicles (DMV) buildings with the intent to commit fraud-related offenses including unauthorized use of identifying information. Defendant was sentenced to prison for an aggregate term of 13 years 8 months, and to jail for a consecutive aggregate term of 1 year.

On appeal, defendant contends the unauthorized use counts are not supported by sufficient evidence that he used the information *without the person's consent*. We reject this contention. Defendant contends, and the People concede, the burglary counts must be reversed and dismissed because they were filed beyond the applicable statute of limitations. We accept the People's concession. We remand for resentencing because, on several counts, the trial court improperly imposed one-third midterm sentences on counts that were stayed pursuant to section 654.

FACTS

The horrific and tragic facts of the collision are not relevant to the two issues on appeal and need not be set forth in this opinion. We summarize the disputed counts and the investigation that brought them to light.

A. *The Disputed Counts*

*Count 4:* On the date of the collision, defendant presented a driver's license to California Highway Patrol (CHP) Officer Jose Rodriguez. That same day, defendant presented a California driver's license, a Social Security card, and a medical certificate

---

[1] Undesignated statutory references are to the Penal Code.

for driving a commercial truck to CHP Officer Marco Rivera. The documents identified defendant as Carlos Adrain (or Adrian) Quintanilla Hernandez.

*Count 13*: On December 9, 2009, defendant was stopped in the City of Colusa for a traffic offense. Defendant presented a driver's license in the name of Carlos Adrain Quintanilla Hernandez. On March 22, 2010, defendant testified under oath in Colusa County Superior Court that he was Carlos Adrain Quintanilla Hernandez.

*Counts 16 & 17*: On January 14, 2008, defendant entered a DMV building, identified himself as Carlos Adrain Quintanilla Hernandez, obtained a DMV application form, and signed that name on the application.

*Counts 20 & 21*: On December 31, 2007, defendant entered a DMV building, identified himself as Carlos Adrain Quintanilla Hernandez, obtained a DMV application, and forged a signature under penalty of perjury on the application.

*Counts 24 & 25*: On May 14, 2004, defendant entered a DMV building, obtained a DMV application, and forged a signature under penalty of perjury in the name Carlos Adrain Hernandez.

*Counts 27 & 28*: On October 2, 2003, defendant entered a DMV building, obtained a DMV application, and forged the name Carlos Adrain Quintanilla under penalty of perjury on the application.

*Counts 31 & 32*: On April 29, 2003, defendant entered a DMV building and obtained a driver's license in the name Carlos Adrain Quintanilla Hernandez.

*Counts 33 & 34*: On August 19, 1998, defendant entered a DMV building and was issued a driver's license in the name Carlos Adrain Quintanilla Hernandez.

*Counts 35 & 36*: On June 18, 1997, defendant entered a DMV building and was issued a driver's license in the name Carlos Adrain Quintanilla Hernandez.

*Counts 37 & 38*: On April 18, 1996, defendant entered a DMV building and was issued a driver's license in the name Carlos Adrain Quintanilla Hernandez.

*Counts 39 & 40*: On March 18, 1996, defendant entered a DMV building and was issued a driver's license in the name Carlos Adrain Quintanilla Hernandez.

### B. *The Investigation*

The month after the collision, CHP investigator Noel Coady interviewed defendant who identified himself as Carlos Quintanilla. He told investigator Coady that in 1990 or 1991 an immigration attorney had assisted him in obtaining a temporary worker's permit. The permit allowed him to obtain a Social Security card and be issued a Social Security number. With those two documents, defendant was able to obtain a valid California driver's license. Defendant told investigator Coady that his parents were Marcelina Ernestina Hernandez and Carlos Quintanilla.

Investigator Coady discovered that a driver's license issued on July 26, 1991, to Carlos Adrain Quintanilla Hernandez depicts someone other than defendant and bears a signature that is different from defendant's signature. The California driver's license or identification card issued on March 18, 1996, does depict defendant.[2]

The real Carlos Adrain Quintanilla Hernandez entered the United States in 1989, established residency, and was issued a resident alien card that he renewed annually through 1993. The real Carlos Hernandez's parents were named Marcelina S. Quintanilla and Carlos Hernandez.

Investigator Coady opined that defendant assumed the identity of Carlos Adrain Quintanilla Hernandez sometime between 1993 and 1996. There was no documentation of the real Carlos Adrain Quintanilla Hernandez after 1993.

On July 19, 2012, investigator Coady again interviewed defendant. Defendant did not claim that his signature was on the original 1991 driver's license. Defendant admitted that he was not the real Carlos Adrain Quintanilla Hernandez, that he had never

---

[2] At the jury trial, the document was referred to as a driver's license. At the court trial, it was referred to as an identification card.

4

met the real Carlos Adrain Quintanilla Hernandez, and that he did not know who the real Carlos Adrain Quintanilla Hernandez was.

DISCUSSION

I

*Insufficient Evidence*

Defendant contends his convictions for unauthorized use are not supported by sufficient evidence that he used the information without the other person's consent. We disagree.

A. *Standard of Review*

"In considering a challenge to the sufficiency of the evidence . . . , we review the entire record in the light most favorable to the judgment to determine whether it contains substantial evidence -- that is, evidence that is reasonable, credible, and of solid value -- from which a reasonable trier of fact could find the defendant guilty beyond a reasonable doubt. [Citation.] We presume every fact in support of the judgment the trier of fact could have reasonably deduced from the evidence. [Citation.] If the circumstances reasonably justify the trier of fact's findings, reversal of the judgment is not warranted simply because the circumstances might also reasonably be reconciled with a contrary finding. [Citation.] 'A reviewing court neither reweighs evidence nor reevaluates a witness's credibility.' [Citation.]" (*People v. Albillar* (2010) 51 Cal.4th 47, 59-60 (*Albillar*).)

"Evidence meeting [the substantial evidence] standard satisfies constitutional due process and reliability concerns. [Citations.]" (*People v. Boyer* (2006) 38 Cal.4th 412, 480, 479.)

"Except where additional evidence is required by statute, the direct evidence of one witness who is entitled to full credit is sufficient for proof of any fact." (Evid. Code, § 411; see *People v. Cuevas* (1995) 12 Cal.4th 252, 262; *People v. Scott* (2002) 100 Cal.App.4th 1060, 1064.)

5

B. *Statutory Framework*

Section 530.5, subdivision (a) provides in relevant part: "Every person who willfully obtains *personal identifying information*, as defined in subdivision (b) of Section 530.55, of another person, and uses that information for any unlawful purpose, including to obtain, or attempt to obtain, credit, goods, services, real property, or medical information *without the consent of that person*, is guilty of a public offense . . . ." (Italics added.)

Section 530.55, subdivision (b) defines " 'personal identifying information' " as including "any name, address, telephone number, health insurance number, taxpayer identification number, school identification number, state or federal driver's license, or identification number [or] social security number . . . ."

In this case, the evidence showed that defendant obtained various driver's licenses or identification cards by tendering the false name Carlos Adrain Quintanilla Hernandez. It is not clear whether he did so by tendering a previous driver's license or identification card. But section 530.55 does not require the use of a prior identification *document.* Rather, defendant's acquisition of the person's *name,* and his tendering it for the unlawful purpose of obtaining a fictitious driver's license without the person's consent, is sufficient. (§ 530.55.)

C. *Trial Court Ruling*

The prosecutor asked the trial court to infer that the real Carlos Adrain Quintanilla Hernandez had not consented to defendant's use of his identity because the two had never met and defendant did not know him. The prosecutor argued, "there's no question that when [defendant] was using the driver's license, the social security card, the resident alien cards of Carlos, the real Carlos, he was -- he had gotten someone else's information that wasn't his, he was willfully using it for an unlawful purpose, and he did it without the consent of Carlos. He admitted to you -- or he admitted in the videos of his

6

interviews that he did not know Carlos, and if you don't know Carlos, you can't get his permission."**3**

The trial court accepted the prosecutor's argument, stating, "[o]bviously he did that without the consent of the real Carlos Hernandez since, by the defendant's own admission, he didn't know that particular person."

D. *The Parties' Arguments*

Defendant contends his admission that he was not personally acquainted with the real Carlos Hernandez is insufficient to prove the element that Carlos Hernandez did not consent to defendant's use of his identifying information. Defendant claims a "highly plausible scenario for [his] possession of the documents is that Carlos Hernandez, after leaving the United States, provided those documents to some middleman or broker so that they could be provided to someone who needed such documents. . . . Although Hernandez would not have been personally acquainted with the ultimate recipient of the documents, he would nonetheless have consented to the use of those documents by that person by providing them to a middleman for that purpose."

Defendant's argument is not supported by any evidence that Carlos Hernandez ever left the United States. Defendant relies on the fact that Carlos Hernandez never renewed his resident alien card after 1993. But no evidence ever established the reason for the lack of renewal. The United States Immigration and Customs Enforcement had no "record that [Carlos Hernandez] had ever left the United States," and no evidence established that he left the country without that agency's knowledge. As defendant concedes in a different context, "[t]hat an event *could* have happened . . . does not by itself support a deduction or inference it did happen." (*People v. Moore* (2011) 51 Cal.4th 386, 406.)

---

**3** In the respondent's brief, this argument by the prosecutor is mistakenly attributed to the trial court.

Nor was there any evidence that Carlos Hernandez provided his identifying documents to a middleman or broker. The trial court could reason that, ordinarily, a person would not be so cavalier or uncaring about his identity as to consent to its brokerage by a middleman and use by a stranger. While there may be circumstances -- including the receipt of sufficient compensation -- under which a person or his surviving family members would consent, no evidence established that any such circumstance existed in this case. Thus, the court could reasonably infer, and not merely speculate, that Carlos Hernandez never entrusted his identifying documents to a broker and never consented to defendant's use of his identity. Our standard of review requires us to presume in support of the judgment that the trier of fact so inferred. (*Albillar, supra,* 51 Cal.4th at pp. 60, 59.) Defendant's argument that the prosecution "failed to close an evidentiary gap mandated by the terms of the statute" has no merit.

Defendant argues that, even if there was no evidence that he received the personal information from an intermediary with Carlos Hernandez's consent, "[w]hat matters is that there was no evidence to the contrary." Indeed, there was no evidence that defendant *did not* receive the information from a middleman or broker. But there also was no evidence that Carlos Hernandez transferred the information to a middleman or broker willingly rather than as a result of loss or theft. Defendant's speculation does not undermine the reasonable inference that Carlos Hernandez did not consent to defendant's use of his identity.

Defendant has not shown that the trial court's inference of lack of consent is speculative or unsupported by sufficient evidence. At most, defendant may have shown that "the circumstances might also reasonably be reconciled with a contrary finding." (*Albillar, supra,* 51 Cal.4th at pp. 59-60.) But that does not warrant reversal of the judgment.

The People claim defendant's convictions are further supported by his "false" statement to investigator Coady that he had obtained identity papers through the services

8

of an "immigration attorney." Defendant replies to the People's claim but his argument is not clear. We need not join the parties' debate because our conclusion is not dependent upon defendant having made a false statement to investigator Coady. Nor need we consider the possibility that the "middleman or broker" referred to in defendant's appellate argument had held himself out as the "immigration attorney" to which defendant had referred in his statement.

Defendant's unauthorized use convictions are supported by substantial evidence. (*Albillar, supra,* 51 Cal.4th at pp. 59-60.)

II

*Statute of Limitations*

Defendant contends his nine convictions of second degree burglary based on his entries into DMV offices with intent to commit fraud-related offenses are time-barred and must be dismissed. He adds that, if his claim was forfeited in the trial court, then his trial counsel rendered ineffective assistance. The People concede that the burglary charges were filed beyond the statute of limitations and must be stricken. We accept the People's concession.[4]

Second degree burglary is punishable by imprisonment in the county jail not exceeding one year or imprisonment pursuant to section 1170, subdivision (h). (§ 461, subd. (b).) At the time of the offenses, second degree burglary was punishable by imprisonment in the county jail not exceeding one year, or in state prison for 16 months, 2 years, or 3 years. (Stats. 1978, ch. 579, § 24, p. 1986.)

Section 801 provides: "Except as provided in Sections 799 [(for offenses punishable by death or life without parole)] and 800 [(for offenses punishable by imprisonment for eight years or more)], prosecution for an offense punishable by

---

[4] The statute of limitations on the other offenses at issue in this appeal, violations of section 530.5, did not commence to run until the offenses were discovered. (§ 803.5.)

9

imprisonment in the state prison or pursuant to subdivision (h) of Section 1170 shall be commenced within three years after commission of the offense." This limit was the same at the time of the charged burglaries. (Stats. 1984, ch. 1270, § 2, p. 4335.)

The most recent burglary was alleged to have occurred on January 14, 2008. The felony complaint was filed more than four years later, on July 25, 2012, and defendant was arraigned on that day, thus commencing the prosecution for purposes of the statute of limitations. (§ 804, subd. (c).) Thus, all nine burglary counts were filed beyond the three-year statute of limitations in section 801.

Section 803, subdivision (c) provides that the statute of limitations for certain crimes commences upon the discovery of the offense. This provision applies to listed offenses, not including burglary, and to unlisted offenses "punishable by imprisonment in the state prison or imprisonment pursuant to subdivision (h) of section 1170, *a material element of which is fraud* or breach of a fiduciary obligation . . . ." (*Ibid*., italics added; see *People v. Price* (2007) 155 Cal.App.4th 987, 996-997 [terming the People's position that burglary is within section 803, subdivision (c) "doubtful" but finding no need to resolve the issue].)

In this case, the complaint alleged that defendant entered DMV buildings with the *intent* to commit crimes a material element of which is fraud. But that allegation does not make fraud an element of the antecedent burglary for purposes of section 803, subdivision (c). Like the crime of conspiracy, the crime of burglary is a "separate and distinct crime from the offense that is the object of the [burglary] and is governed by a separate and distinct statute of limitations." (*People v. Milstein* (2012) 211 Cal.App.4th 1158, 1164-1168.)

We reverse defendant's convictions on the burglary counts and direct the trial court to enter dismissals of those counts.

## III

### *Resentencing on Stayed Counts*

Our review of the record discloses a sentencing error on seven counts of unauthorized use.  On counts 17, 19, 21, 23, 25, 28, and 30, the trial court imposed one-third middle terms of eight months and then ordered those terms stayed pursuant to section 654.

"The one-third-the-midterm rule of section 1170.1, subdivision (a), only applies to a consecutive sentence, not a sentence stayed under section 654."  (*People v. Cantrell* (2009) 175 Cal.App.4th 1161, 1164.)  On remand, trial court shall exercise its discretion to impose low, middle, or upper terms and then stay those sentences pursuant to section 654.

### DISPOSITION

Defendant's convictions on counts 16, 20, 24, 27, 31, 33, 35, 37, and 39 are reversed and the trial court is directed to enter dismissals of those counts.  In all other respects, the judgment of conviction is affirmed.  Defendant's sentence is reversed and the matter is remanded for resentencing consistent with this opinion.

      BLEASE      , Acting P. J.

We concur:

    NICHOLSON    , J.

    HOCH    , J.

11