Filed 2/8/21  P. v. Duarte CA3

<u>NOT</u> <u>TO</u> <u>BE</u> <u>PUBLISHED</u>

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Sacramento)

----

| | |
|---|---|
| THE PEOPLE, | |
| Plaintiff and Respondent, | C088532 |
| v. | (Super. Ct. No. 15F07345) |
| OSHEA DUARTE, | |
| Defendant and Appellant. | |
| THE PEOPLE, | C088674 |
| Plaintiff and Respondent, | |
| v. | (Super. Ct. No. 13F05061) |
| OSHEA DUARTE, | |
| Defendant and Appellant. | |

In case No. 15F07345, a jury convicted defendant Oshea Duarte of conspiracy to commit robbery (count one), assault with a semiautomatic firearm (count two), robbery (count three), and possession of a firearm by a person who has been convicted of a felony

1

(count four). The jury found true that defendant committed the offenses for the benefit of, at the direction of, or in association with a criminal street gang (the Oak Park Bloods), with the specific intent to promote, further, or assist in any criminal conduct by gang members. (Pen. Code, § 186.22, subd. (b)(1).)[1] With respect to count three, the jury also found true that at least one principal intentionally and personally used a firearm. (§ 12022.53, subd. (e)(1).)

The trial court sentenced defendant to 12 years in prison based on the low term of two years for the robbery conviction (count three), plus a ten-year enhancement under section 12022.53, subdivision (e)(1). The court also sentenced defendant to a concurrent term of three years plus a three-year enhancement under section 186.22, subdivision (b)(1) for count four, and imposed and stayed terms on counts one and two under section 654.

Defendant was sentenced to a concurrent term of four years in case No. 13F05061 for violating probation by possessing a firearm and the related enhancement under section 186.22, subdivision (b)(1).

On appeal, defendant contends: (1) his convictions in case No. 15F07345 should be reversed because they are based on the uncorroborated testimony of accomplices; (2) his sentence for possession of a firearm by a convicted felon should be reduced to two years; (3) he should have received additional days of presentence credit; and (4) the abstract of judgment and minute order should be amended to strike all of the fees and fines that were not orally pronounced by the trial court. Additionally, defendant asks us to conduct an independent review of the sealed records regarding his *Pitchess*[2] motion.

---

[1] Undesignated statutory references are to the Penal Code.

[2] *Pitchess v. Superior Court* (1974) 11 Cal.3d 531 (*Pitchess*).

We will remand for the trial court to clarify the sentence on his conviction for possession of a firearm by a convicted felon, correct the award of presentence credit, and determine victim restitution pursuant to section 1202.4, subdivision (f). We will direct the court to correct the abstract of judgment and sentencing minute order by deleting all other fees and fines except the $160 court operations assessment and the $120 court facilities assessment. The judgments are otherwise affirmed.

## I. BACKGROUND

The victim testified that, on November 15, 2015, he made plans to meet a young woman he had met on Facebook at a restaurant. While he was walking to the restaurant, three men who seemed to be following him asked if he wanted to buy some marijuana. The men were African-American and had dreadlocks. He described two as "light skinned" and one as "dark skinned." After the victim declined their offer, the three men walked away, but eventually the victim realized they were still following him. When the victim met the woman at the restaurant, she had brought another woman who asked if he was going to buy her dinner too. He said no. The second woman suggested going to her house, and so the victim and both women began to walk away from the restaurant.

As they started walking, three men with guns ran toward the victim. The light-skinned man who was a lot taller than him and had dreadlocks from the ear to the mid-neck threw him to the ground.[3] The victim was also hit with a gun. He was not sure which light-skinned man hit him with the gun. The men took two cell phones and a belt worth $500 from the victim.

The victim testified that no one in the courtroom looked like the men who attacked him.

---

[3] The victim is 5 feet 5 inches tall.

3

At trial, the parties stipulated that if a certain officer who spoke to the victim shortly after the incident was called to testify, the officer would state, in part, that the victim described the man who tackled him as "a light-skinned black male with black short . . . dreadlocks. He was wearing a black beanie and a black hoodie. He was about 18 to 21 years old and about five feet eight inches."[4] The parties also stipulated that the officer would have testified that the victim was extremely emotional and had a hard time communicating what happened, answering clarifying questions, and remembering details.

A different officer testified that, two days after the robbery, the victim described his attacker as a tall, skinny man with dreadlocks going down between the mid-ear and the neck level.

A detective testified she showed the victim a photo lineup that included defendant in the second position. When the detective was asked if the victim was able to identify someone from the photo lineup, she responded, "He said none of them." The detective also testified that the victim indicated one person looked like the person who tackled him. The victim pointed to the person in the second position and said that he had the same face shape, dreadlocks, and light skin. The victim did not remember seeing any tattoos because the person who tackled him was wearing a coat and thus may or may not have had tattoos. The victim said this photograph looked the closest of all the pictures to the person who tackled him.

A.J., V.C., and Z.A. each testified at trial. A.J. pled guilty to the robbery. A.J. testified that she was the person who had been communicating with the victim over Facebook and planned to meet him at the restaurant. She told her plans to V.C., Z.A., defendant, and "Gleeco," all of whom were at her house. They decided to rob the victim. A.J. testified that V.C. came with her to meet the victim at the restaurant. A.J. told law

---

[4] Defendant was 21 years old at the time of the offense.

enforcement that defendant was the one who tackled the victim. A.J. and V.C. sold the victim's phone, and V.C. kept the money.

Z.A. was convicted of robbery for his participation in the crime. He also testified that V.C., Gleeco, and defendant were at A.J.'s house when they decided to rob the victim. Z.A. confirmed that the three men who approached the victim asking if he wanted to buy marijuana, and then subsequently robbed him, were Gleeco, defendant, and himself. Defendant tackled the victim and then ran off. Z.A. took the victim's belt and went through his pockets. Gleeco held a gun to the victim and hit him with it. Z.A. said he and defendant did not have guns. They all ran back to A.J.'s house after the robbery. Z.A. gave her the victim's phone.

V.C. was not charged and testified pursuant to a subpoena. The jury was shown an interview in which V.C. identified defendant as participating in planning the robbery and personally body slamming the victim.

Defendant posted a picture on Instagram of a portion of a police report mentioning Z.A., A.J., Gleeco, and himself. The accompanying text indicated there was a better picture of "his" name on the paperwork and, "He tellen on my brother–he is telling on my brother–I need this posted. He got to get dubbed out." In another post, defendant linked to Z.A.'s Facebook page.[5] A detective in the gang unit of the Sacramento Police Department testified that defendant's postings were trying to get information out on someone believed to be cooperating with law enforcement who needed to be dealt with.

Another post from defendant's Instagram account showed him boasting that he had made it another year and saying, "Catch me if you can." He also said, "free Gleeco."

The detective testified that he believed defendant, Gleeco, and Z.A. were all currently members of the Oak Park Bloods, and defendant had a ranking within the gang

---

[5] One of the officers who testified said that he talked to Z.A.

that was "substantially higher than most." The detective indicated defendant is about six feet three inches tall.

A warrant was issued for defendant's arrest, and police learned that he was living in Santa Barbara. A detective from the Santa Barbara County Sheriff's Department took defendant into custody. Defendant said he knew of the warrants and had been on the run for about two years. He asked the detective how they had found him. The detective explained that defendant had posted on Instagram that he was on the run, and they had used Instagram to track him down. The detective said defendant "kind of shrugged it off."

## II. DISCUSSION

*A.     Corroboration of Accomplice Testimony*

Defendant contends his convictions in case No. 15F07345 should be reversed because they are based on the uncorroborated testimony of accomplices. We disagree and conclude the accomplice testimony was sufficiently corroborated by independent evidence of defendant's guilt.

Section 1111 provides: "A conviction can not be had upon the testimony of an accomplice unless it be corroborated by such other evidence as shall tend to connect the defendant with the commission of the offense; and the corroboration is not sufficient if it merely shows the commission of the offense or the circumstances thereof." The parties agree that A.J., Z.A., and V.C. were all accomplices. Indeed, the court instructed the jury that defendant could not be convicted based on their statements or testimony alone.

"The requirement that accomplice testimony be corroborated is an ' "exception[ ]" to the substantial evidence' rule. [Citation.] It is based on the Legislature's determination that ' "because of the reliability questions posed by" ' accomplice testimony, such testimony ' "by itself is insufficient as a matter of law to support a conviction." ' [Citations.] Section 1111 does not affect the admissibility of accomplice testimony but rather 'reflects a legislative determination of how accomplice testimony

6

must be treated.' " (*People v. Romero and Self* (2015) 62 Cal.4th 1, 32 (*Romero and Self*).)

"Thus, for the jury to rely on an accomplice's testimony about the circumstances of an offense, it must find evidence that ' "without aid from the accomplice's testimony, tend[s] to connect the defendant with the crime." ' [Citations.] 'The entire conduct of the parties, their relationship, acts, and conduct may be taken into consideration by the trier of fact in determining the sufficiency of the corroboration.' [Citations.] The evidence 'need not independently establish the identity of the victim's assailant' [citation], nor corroborate every fact to which the accomplice testifies [citation], and ' "may be circumstantial or slight and entitled to little consideration when standing alone" ' [citation]. 'The trier of fact's determination on the issue of corroboration is binding on the reviewing court unless the corroborating evidence should not have been admitted or does not reasonably tend to connect the defendant with the commission of the crime.' " (*Romero and Self*, *supra*, 62 Cal.4th at pp. 32-33.)

We conclude sufficient evidence other than the accomplice testimony connected defendant with the crime. In particular, the victim's description of his attacker was not definitive but suggestive, and defendant's subsequent Instagram posts indicated he had indeed been the attacker.

Defendant argues his statements in his Instagram posts did not tie him any closer to the crime than any other gang member. He notes that he complained about someone telling on his "brother" and not himself. Additionally, defendant suggests that to the extent we can conclude from his Instagram posts that he was hiding from law enforcement, he was absconding from parole. We disagree. Defendant posted a portion of a police report with his name on it. Further, the juxtaposition of "[c]atch me if you can" and "[f]ree Gleeco" in another post suggests defendant thought he had gotten away with something in connection with a new proceeding. It was clear from his postings that defendant was aware law enforcement was interested in Gleeco and himself. It was

7

reasonable to infer defendant was boasting about not being caught while Gleeco presumably had been. Moreover, defendant admitted to law enforcement that he had been on the run for about two years at the time of his arrest in July 2017. It was thus reasonable to infer from defendant's own statements that he went on the run after the robbery.[6] To the extent he absconded from parole, the record suggests he did so because of the robbery and not because he thought he was being wrongly accused.

Defendant would have us disregard all of the victim's statements about his appearance because the victim did not identify him in court or with certainty in the photo lineup. Defendant also discredits the victim's description on the basis of one statement to law enforcement that defendant was 5 feet 8 inches tall despite the fact the victim testified defendant was "a lot" taller than him and agreed that he was really tall. We cannot conclude the evidence must be disregarded. (Cf. *People v. Cuevas* (1995) 12 Cal.4th 252, 257 [sufficiency of uncorroborated out-of-court identification to support a conviction must be determined under the substantial evidence test].) The victim's descriptions of defendant as consistent with his attacker may be slight or entitled to little consideration on their own and do " 'not independently establish the identity of the victim's assailant,' " but together all the evidence the non-accomplice testimony presented was sufficient to connect defendant to the commission of the crimes charged. (*Romero and Self*, *supra*, 62 Cal.4th at pp. 32-33.)

B.     *Pitchess Motion*

Prior to trial, defendant filed a *Pitchess* motion seeking discovery of certain law enforcement personnel records of one officer, including any complaints of false arrest, fabrication of charges or evidence, illegal searches, or dishonesty. The trial court granted the motion and conducted an in-camera hearing. Following the in-camera hearing, the

---

[6] A.J. testified that, after being contacted by the police, she contacted Gleeco and defendant and warned them that the police were investigating the crime.

8

court explained that the only relevant document was related to an incident defense counsel was already aware of. The court ordered the disclosure of the name and contact information of the witness. The transcripts were sealed and a protective order was issued.

Defendant asks this court to conduct an independent review of the sealed records of the trial court's hearing on his *Pitchess* motion. (*People v. Mooc* (2001) 26 Cal.4th 1216, 1228-1229, 1232.) The People do not oppose the request.

We will not disturb a trial court's ruling on a *Pitchess* motion absent an abuse of discretion. (*Alford v. Superior Court* (2003) 29 Cal.4th 1033, 1039, disapproved on another ground in *Facebook, Inc. v. Superior Court (Touchstone)* (2020) 10 Cal.5th 329, 345, fn. 6.) We have reviewed the sealed transcript of the in camera proceeding in which the trial court questioned the custodian of records under oath. Based on our review the sealed records, we find no procedural or substantive error. The court did not abuse its discretion in finding no additional disclosable evidence.

## C.     *Sentence on Count Four*

Before he pronounced judgment, the trial court stated, "I'm not going to follow either probation's recommendation or the People's recommendation because . . . there is not a need in this case to max the defendant out, but I do think the conduct was very serious." With respect to count four, defendant was convicted of possession of a firearm by a convicted felon under section 29800, subdivision (a)(1). The court said, "I'm going to impose the middle term of three years on Count Four, plus the three-year enhancement. I'll pick the three years out of the triad on the enhancement, but I'm going to run that concurrently as well."

The parties agree that the middle term for a violation of section 29800, subdivision (a)(1) is two years, and the upper term is three years. (§ 18, subd. (a).) Accordingly, defendant argues we should reduce the term imposed by the court because it was unauthorized, or remand for resentencing. The People note the abstract of judgment contains the same discrepancy and argue we should remand to the trial court to clarify its

9

sentence. Because we conclude the record is unclear as to the trial court's intent, we will remand.

D. *Custody Credits*

Defendant asserts, and the People agree, that in case No. 15F07345, he is entitled to an additional five days of actual presentence custody credit and an additional day of conduct credit (15 percent pursuant to section 2933.1) because the record indicates that he was taken into custody in Santa Barbara on July 12, 2017, but he was credited only for time served in the Sacramento County Jail (506 days). We accept the concession in principle. (*People v. Bravo* (1990) 219 Cal.App.3d 729, 735.) However, the parties have miscalculated its impact. The record indicates defendant was credited for time spent in the Sacramento County Jail from July 27, 2017, not July 17 as stated in defendant's briefing. Thus, defendant is entitled to an additional 15 days of actual presentence custody credit and an additional two days of conduct credit. On remand, the court should correct the sentencing minute order and abstract of judgment to reflect 521 days of actual custody credit plus 78 days of conduct credit.

The People note that in case No. 13F05061, the court awarded defendant 506 days of custody credit, plus 506 days of conduct credits (pursuant to section 4019), plus 365 days of credit for time served as a condition of his original probation. That totals 1,377 days, but the abstract of judgment indicates defendant was awarded 1,842 days of credits in that case. The People contend the trial court should correct or clarify this disparity. Defendant offers no response. On remand, the court must clarify the disparity, taking into account the 521 days of actual custody credit to which defendant was entitled.

E. *Fines and Fees*

The minute order and abstract of judgment reflect various fines and fees, including a $5,600 restitution fine under section 1202.4, subdivision (b); a $5,600 parole revocation restitution fine under section 1202.45, suspended pending successful completion of parole; a $670 victim restitution payment under section 1202.4, subdivision (f); a $160

10

court operations assessment under section 1465.8; a $120 court facilities assessment under Government Code section 70373; and a $453.62 booking fee pursuant to Government Code section 29550.2. However, no fines and fees were orally pronounced. Because the oral pronouncement of judgment generally controls over the minutes and abstract of judgment (*People v. Zackery* (2007) 147 Cal.App.4th 380, 385), defendant argues we should strike all of the fines and fees reflected in the abstract of judgment and the minutes.

The People contend we should impose the $160 court operations assessment and the $120 court facilities assessment because they are both mandatory. Until recently it appeared settled that the court operations and court facilities assessments are mandatory "and may be added on review." (*People v. Rodriguez* (2012) 207 Cal.App.4th 1540, 1543, fn. 2.) The rule that these assessments are mandatory regardless of ability to pay was analyzed in *People v. Dueñas* (2019) 30 Cal.App.5th 1157 (*Dueñas*), which held "due process of law requires the trial court to conduct an ability to pay hearing and ascertain a defendant's present ability to pay before it imposes court facilities and court operations assessments under [ ]section 1465.8 and Government Code section 70373." (*Id*. at p. 1164.) The *Dueñas* court also held "that although [ ]section 1202.4 bars consideration of a defendant's ability to pay unless the judge is considering increasing the fee over the statutory minimum, the execution of any restitution fine imposed under this statute must be stayed unless and until the trial court holds an ability to pay hearing and concludes that the defendant has the present ability to pay the restitution fine." (*Ibid*.) Defendant argues we should assume the court struck the fines pursuant to *Dueñas*. This argument assumes the court could have done so. We disagree. Instead, we agree with those authorities that have concluded that the principles of due process and equal protection do not afford a defendant a hearing on and determination of his ability to pay before imposing the assessments at issue in *Dueñas* and in this proceeding. (E.g., *People v. Kingston* (2019) 41 Cal.App.5th 272, 279-282; *People v. Hicks* (2019) 40 Cal.App.5th

11

320, 326-329, review granted Nov. 26, 2019, S258946; *People v. Aviles* (2019) 39 Cal.App.5th 1055, 1068-1069; *People v. Caceres* (2019) 39 Cal.App.5th 917, 928.)[7]  As a result, the assessments remain mandatory, and we will not strike them from the minutes or the abstract of judgment based on the trial court's failure to orally pronounce them at sentencing.

The People contend we should remand to allow the trial court to award victim restitution pursuant to section 1202.4, subdivision (f).  Defendant argues remand is inappropriate because, under *People v. Tillman* (2000) 22 Cal.4th 300, the prosecution has forfeited any objection to the failure to impose victim restitution.  *Tillman* is inapplicable because it involved the consequence of the trial court not imposing a restitution fine under section 1202.4, subdivision (b) without articulating its reasons for doing so.  (*Tillman, supra*, at p. 302.)  Unlike the imposition of a restitution fine, an award of victim restitution is not a discretionary sentencing choice.  (*People v. Moreno* (2003) 108 Cal.App.4th 1, 8-9.)  The trial court must award victim restitution or the sentence is unauthorized and invalid.  (*Id*. at p. 10.)  The forfeiture bar to appellate review discussed in *Tillman* does not apply to victim restitution pursuant to section 1202.4, subdivision (f).  (See *People v. Smith* (2001) 24 Cal.4th 849, 852-853 [explaining that an invalid parole revocation fine is exempt from the waiver rule].)

We will direct the trial court to address the issue of victim restitution on remand and to correct the sentencing minutes and the abstract of judgment to delete all other fees

---

[7]  Our Supreme Court is now poised to address the issue, having granted review in *People v. Kopp* (2019) 38 Cal.App.5th 47, review granted November 13, 2019, S257844, which agreed with the court's conclusion in *Dueñas* that due process requires the trial court to conduct an ability to pay hearing and ascertain a defendant's ability to pay before it imposes court facilities and court operations assessments under section 1465.8 and Government Code section 70373, but not restitution fines under section 1202.4.  (*Kopp, supra*, at pp. 95-96.)

and fines except the $160 court operations assessment and the $120 court facilities assessment.

### III.  DISPOSITION

The case is remanded to the trial court to clarify the sentence for possession of a firearm by a convicted felon, correct the calculations of presentence custody credit as described in this opinion, and for a determination of victim restitution pursuant to section 1202.4, subdivision (f).  The trial court is directed to correct the abstract of judgment and sentencing minute orders by deleting all other fees and fines except the $160 court operations assessment and the $120 court facilities assessment.  The court shall forward a certified copy of the corrected abstract of judgment to the Department of Corrections and Rehabilitation.  In all other respects, the judgments are affirmed.

/S/

_____

RENNER, J.

We concur:

/S/

_____

HULL, Acting P. J.

/S/

_____

HOCH, J.

13